**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JESSICA W.,[1]  Case No. 2:22-cv-2356

    Plaintiff,  Bowman, M.J.

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**MEMORANDUM OPINION AND ORDER[2]**

Plaintiff Jessica W. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff asserts two errors relating to the ALJ's evaluation of the opinion evidence. For the reasons stated, the ALJ's decision is supported by substantial evidence in the record and therefore is AFFIRMED.

**I. Summary of Administrative Record**

On October 29, 2019, Plaintiff filed an application seeking disability insurance benefits ("DIB"), alleging a disability onset date of June 30, 2017 based primarily upon back issues, including "Roto-scoliosis with double curvature, anterior spinal fusion due to scoliosis, mid cervical disc degeneration, mid lumbar disc degeneration, numbness and tingling in hands, numbness and tingling in feet." (Tr. 17). After Plaintiff's application was denied initially and upon reconsideration, she sought an evidentiary hearing. On

---

[1]Due to significant privacy concerns in social security cases, claimants in social security cases are referred to only by their first names and last initials. *See* General Order 22-01.
[2]The parties have consented to disposition by the undersigned magistrate judge. *See* 28 U.S.C. § 636(c).

1

December 15, 2020, Plaintiff appeared, through counsel, and gave testimony before Administrative Law Judge ("ALJ") Patricia Carey; a vocational expert also testified. (Tr. 26-60).

Plaintiff was 27 years old on her alleged disability onset date, and remained in the same "younger individual" age category through the date of the ALJ's decision. She is married, with a high school education and "some college," and lives in a single-family home with her husband and three children. (Tr. 36, 171). Her children were 1, 3, and 10 years old, respectively, at the time of the hearing. (Tr. 33; *see also*, *generally*, Tr. 430 (October 2010 birth); Tr. 380 (June 2017 birth); Tr. 344 (March 2019 birth)). She has past relevant work as an EMT and as a cashier. (Tr. 36, 39-41).

On March 2, 2021, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 14-21). The ALJ determined that Plaintiff has severe impairments of: "obesity; lumbosacral spinal stenosis; other idiopathic thoracolumbar scoliosis; remote history of scoliosis surgery; and cervical displacement with radiculopathy." (Tr. 16). Plaintiff does not dispute the ALJ's determination of which impairments were severe, nor does she challenge the determination that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*Id.*)

The ALJ found that Plaintiff cannot perform her past relevant work, but that she retains the residual functional capacity ("RFC") to perform a restricted range of unskilled sedentary work, subject to the following limitations:

> She can occasionally climb ramps and stairs, never climb ladders ropes or scaffolds, and can occasionally stoop, kneel, crouch, and crawl. She is limited to frequent handling, fingering and feeling with the bilateral hands. She can occasionally reach overhead with the upper extremities. She can

2

> never work around hazards, such as unprotected heights or moving dangerous mechanical parts. She is limited to no foot controls or no commercial driving. She is to be able to elevate her lower extremities at the workstation six to nine inches.

(Tr. 17). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform jobs that exist in "significant numbers" in the national economy, including the representative occupations of telephone information clerk, document preparer, and surveillance system monitor. (Tr. 20). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that the ALJ erred: (1) when she dismissed the opinions contained in a functional capacity examination ("FCE") as unpersuasive without adequate explanation of their supportability and consistency; (2) when she failed to provide "traceable reasoning" for the RFC as adopted, including a logical explanation for her incorporation of only some of the agency consulting opinions and FCE opinions.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that

4

claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Relevant Evidence of Record**

Prior to turning to Plaintiff's claims of error, the Court summarizes the relevant medical and nonmedical evidence of record.

At the time of her alleged onset of disability, Plaintiff's first born son was 6 ½ years old and she had just given birth to her middle son.[3] By the time she completed her January 2020 function report, Plaintiff had given birth to a third child; her sons were then ages 9, 2, and 9 months. In her function report, Plaintiff reported that she prepares simple meals, cleans bathrooms, sweeps, does laundry (without lifting) and dishes (with help), and shops for her family both on line and in stores approximately 2 to 5 hours per week with breaks. (Tr. 185-186; *see also* Tr. 18). She reported caring for and playing with her two younger children during the day while her oldest is at school and her husband is at

---

[3]Plaintiff testified that she quit her job as an EMT in April or May of 2017 because lifting limitations related to her back impairment made it difficult for her to perform that job. (Tr. 36-37). She further testified that she gave birth to her middle child in June 2017, roughly corresponding with her alleged onset of disability. (*Id.*)

5

work, caring for two dogs,[4] watching television, sewing, and visiting with friends and family or speaking to them on the phone. (Tr. 18, 49). She testified at the hearing that she also attends church weekly and "love[s] to sew" as a hobby. She also "love[s] to cook" but cannot stand for too long. (Tr. 48-49). She attends her oldest son's sporting events at school on a weekly basis, occasionally picks him up from school, and attends doctor's appointments and occasional meetings. (Tr. 187; Tr. 18). She stated in her function report that bending, squatting and kneeling cause her "severe pain in back and hips." (Tr. 188).

For the first two years and four months after her alleged onset of disability, Plaintiff sought no medical treatment for her back impairments. On October 25, 2019, she first sought treatment from Dr. Frank Furnish, M.D., a specialist at the Orthopedic Institute of Ohio. At the initial exam, she reported a childhood history of surgical treatment for scoliosis, with ongoing cervical, thoracic and lumbar pain and a "new onset" over "the last three months" of bilateral radiculopathy in her upper extremities resulting in some numbness and tingling in her arms and hands. (Tr. 261, 278).[5] She reported that she could sit, stand, and walk for about 30 minutes at a time, but that postural activities for longer periods aggravated her symptoms. (*Id.*) She stated at her first appointment that she would like to discuss going on disability, (*see id.*), and in fact submitted her DIB application four days later.

Apart from the referenced subjective complaints, Dr. Furnich's objective exam reflects only normal findings, including full strength and sensation in both upper and lower

---

[4]Plaintiff testified that her sons also have two ducks as pets, and that they used to have chickens but they butchered them for meat. (Tr. 49).
[5]Plaintiff's counsel provides this Court only with "PageID" citations (which cannot be easily searched in Social Security cases) rather than citing to the Administrative Transcript ("Tr."). Counsel is reminded that Local Rule 8.1(d) requires parties in Social Security cases to "provide pinpoint citations to the administrative record, regardless of whether a party also chooses to provide PageID citations."

extremities, a negative straight leg raising test, and no tenderness to palpation. (Tr. 278-279). Dr. Furnich referred Plaintiff for a cervical MRI to help assess the cause of her newly reported radiculopathy, and referred her back to her primary care physician for weight management and dietary counseling.[6] He also prescribed a back brace for home use to help improve her reported lumbar pain. (Tr. 279).

The cervical MRI report, dated November 2019, revealed a "C3-C4 shallow central and left lateral disc protrusion subtly flattening left ventral cord margin and encroaching upon left C4 nerve root." (Tr. 266). At a follow-up appointment in on November 12, Dr. Furnich again noted a normal examination. He opined that Plaintiff's report of neck and thoracic spine pain "cannot be fully explained from her MRI appearance." (Tr. 274). Therefore, he advised Plaintiff to continue a home exercise program and to "tak[e] reassurance" that no further surgery was warranted based upon imaging and his examination. (*Id.*) He also provided her with more information about a "Weight Management Program." (*Id.*)

On April 21, 2020, Plaintiff returned to Dr. Furnich complaining that her right low back pain and right leg pain were making it difficult to care for her three children and to maintain an active lifestyle. (Tr. 290). She reported her symptoms worsened with walking and were improved by sitting down. (*Id.*) At that appointment, Plaintiff stated she intended to pursue disability benefits "because of her work history and [because] going back to a factory would be very difficult and also going back to EMS work would be very difficult with her back history." (Tr. 291). Although Dr. Furnich noted that Plaintiff's stated intention sounded "reasonable," he provided no RFC opinions and did not suggest that Plaintiff

---

[6]Plaintiff is 5'2" and weighs approximately 200 pounds.

7

would be disabled from even sedentary work. He again recommended only conservative treatment including exercise, core strengthening, and over-the-counter anti-inflammatories as needed. (Tr. 291). He also suggested a steroid injection, but Plaintiff declined that option. (*Id.*)

Six months later, on November 17, 2020, Plaintiff returned for a final visit with Dr. Furnich. (Tr. 324-325). Again, Dr. Furnish noted normal examination findings with full strength and sensation. (*Id.*) He assessed her reported low back and radicular pain as stemming from the neurocompression of the L4-L5 and L5-S1 levels, and recommended an epidural injection to treat her pain, for which no insurance pre-certification was required. Plaintiff stated she "may" schedule that injection in the future. (Tr. 325). To assist with her more immediate intention to pursue disability, Dr. Furnich referred Plaintiff for a functional capacity exam. (*Id.*)

Plaintiff presented for a functional capacity exam ("FCE") by a physical therapist ("PT"), Mr. Reed, on December 14, 2020, the day before her hearing before the ALJ. At the time of her exam, Plaintiff's pain level was a "3." She reported that her pain increased with sitting or standing for "prolonged periods" and with increased activity. (Tr. 329). The FCE report was submitted into the record shortly after the evidentiary hearing.[7]

### C. Plaintiff's Claims of Error

#### 1. The ALJ's Assessment of Plaintiff's FCE

Plaintiff first argues that the ALJ failed to properly articulate the persuasiveness of the opinions provided by Mr. Reed in his FCE report. Rather than assigning a particular

---

[7]The ALJ expressed her concern that proceeding with the evidentiary hearing without the FCE report was "a problem." (Tr. 31). After counsel reassured the ALJ that the FCE would soon be submitted, the ALJ agreed to proceed with the hearing rather than to reschedule it. (*Id*. at 31-32)

"weight" to each opinion under a previously defined hierarchy of medical opinions, current regulations[8] require the ALJ to determine the "persuasiveness" of each prior administrative medical finding or other medical opinion based upon a list of factors, the most important of which are "supportability" and "consistency." *See* 20 C.F.R. § 404.1520c(b)(2). Supportability focuses on the provider's explanations for his or her opinions, including whether the opinions are supported by relevant objective medical evidence (such as lab results or imaging studies) or other supporting explanations. *See* 20 C.F.R. § 416.920c(c)(1). Consistency is defined as the extent to which an opinion or finding is consistent with evidence from other medical or nonmedical sources. 20 C.F.R. § 416.920c(c)(2).

Under current regulations, an ALJ must explicitly discuss how the two "most important" factors of supportability and consistency have been considered in determining the persuasiveness of each medical source's opinion.

> The factors of supportability… and consistency… are the most important factors….Therefore, **we will explain how we considered the supportability and consistency factors** for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the [other listed] factors….

20 C.F.R. § 404.1520c(b)(2) (emphasis added). Plaintiff qualifies her argument before this Court by stating that she "is not asserting that the ALJ should have found [Mr. Reed's] opinions persuasive" but is arguing only that the ALJ did not "properly" explain how she evaluated the factors of consistency and supportability. (Doc. 9 at 12, PageID 480).

---

[8]Revised regulations apply claims filed after March 27, 2017. *See generally*, 20 C.F.R. § 404.1520c. The revised regulation eliminates what was formerly known as the "treating source rule" and instead focuses on a list of other factors, of which the most important are supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2).

In his FCE report, Mr. Reed opined that Plaintiff could "lift, push and pull up to 15 pounds; could sit frequently and occasionally stand and walk; could never kneel, rarely squat, occasionally reach, never bend or crawl, rarely climb stairs, never climb ladders, and constantly use her hands." (Tr. 19, citing Tr. 327-331). The ALJ ultimately found the FCE report opinions to be "only partially persuasive." (Tr. 19). The ALJ essentially adopted the lifting and carrying restrictions by limiting Plaintiff to sedentary work. However, the ALJ explicitly rejected the opinions that Plaintiff could never bend, kneel or crawl, and instead found Plaintiff to be capable of all three activities on an "occasional" basis. To explain her reasoning, the ALJ stated that:

> [A] complete inability to kneel, bend, or crawl is not supported by the record, which reflects no actual treatment during the relevant period, only minimal findings on objective testing, and routinely normal physical examinations, *as detailed above*. The undersigned further notes that the claimant was pregnant, had a child, and was the primary caregiver for that child during the relevant period, which requires the claimant to be more active and perform the various postural movements more frequently than this opinion suggests.

(Tr. 19 (emphasis added)).

Prior to delving into whether the ALJ committed an articulation error in explaining why she was rejecting Mr. Reed's opinions on kneeling, bending and crawling, it is worth pointing out that any error in the rejection of those opinions was harmless on the record presented. As the Commissioner notes, none of the three representative jobs identified by the vocational expert from the Dictionary of Occupational Titles require any stooping, kneeling, crouching or crawling.

In any event, the Court concludes that the ALJ adequately articulated her analysis of both "consistency" and "supportability" notwithstanding her failure to use those precise terms. Mr. Reed conducted his examination one day prior to Plaintiff's evidentiary hearing, which was 3 ½ years after Plaintiff's alleged onset of disability. Substantively, the ALJ

10

explained that she found some of the opinions expressed in the FCE to be both inconsistent with, and unsupported by, the "minimal" objective findings or the clinical records during the relevant disability period.

With respect to the supportability factor, Plaintiff argues that the ALJ "overlooked" that "Mr. Reed's opinions were based on an in-person evaluation and were internally supported." (Doc. 9 at 8, PageID 476). But that is incorrect. The very definition of an FCE is that it is an in-person "functional capacity examination." And the ALJ acknowledged that the FCE was performed in-person by Mr. Reed on December 14 both in the colloquy at the hearing and in her written opinion. (Tr. 19). Plaintiff does not elaborate upon what other "internal[] support" for Mr. Reed's findings the ALJ should have discussed but did not. The report itself states that it is based on "testing," but includes virtually no explanation about the nature of such "testing" beyond generic, vague descriptions.[9] For example, with respect to postural activities, the report includes this boilerplate statement: "Testing is performed either formally or informally depending on the significance of the posture relative to the overall required work demands." (Tr. 330). There is no description of what actual postural tests were performed by Mr. Reed on Plaintiff. The only other support for the stated postural restrictions are range of motion findings recorded on the date of the exam. Specifically, while Mr. Reed found normal range of motion for Plaintiff's upper and lower extremities as well as for her cervical spine, he noted that her trunk/low back range of motion was limited by 25% in flexion, and by 50% in flexion and rotation and extension. (Tr. 328).

---

[9] Many FCEs include internal tests to measure the examinee's level of effort and/or to indicate reliability and validity. The FCE report generated by Mr. Reed contains no such information.

11

Given the paucity of any explanation in the FCE about what testing was performed or how Mr. Reed ascertained that Plaintiff could "never" engage in <u>any</u> bending, kneeling, or crawling, the Court finds no reversible error in the ALJ's failure to include greater discussion of the "supportability" factor. The ALJ's analysis adequately explains that the FCE opinions were based upon Mr. Reed's one-time examination approximately 3 ½ years after her alleged onset of disability, and were not supported "by the record" or more than "minimal" objective findings. Those "minimal" findings include the lack of support provided by Mr. Reed within the body of the FCE report.[10]

With respect to the consistency factor, the ALJ discussed Plaintiff's daily activities as a full-time caretaker of three young children, including an infant, as among the facts that were inconsistent with a complete inability to perform any bending, kneeling or crawling. The ALJ also specifically incorporated her prior analysis of all of the objective and clinical evidence, including the fact that although Plaintiff alleged a disability date of June 30, 2017, she sought no treatment at all for her allegedly disabling back issues until October 25, 2019, when she first presented for an initial examination. (Tr. 278). Thus, it is clear from the ALJ's analysis that she rejected Mr. Reed's most extreme postural limitations based upon the inconsistency of those opinions with the rest of the medical and nonmedical record.

---

[10]Plaintiff only briefly argues that Mr. Reed's FCE limitations "were well-documented by Dr. Furnich" (Doc. 9 at 10, PageID 478). To the contrary, Dr. Furnich's objective examinations reflect only normal findings. Moreover, Dr. Furnich opined that Plaintiff's symptom report "cannot be fully explained" by objective imaging. (Tr. 274). To the extent that Dr. Furnich recommended anything other than a home exercise program and conservative treatment to alleviate Plaintiff's subjective pain complaints, she declined to proceed with the recommended injections. In addition, the ALJ made an adverse credibility/consistency finding regarding Plaintiff's subjectively reported complaints.

Notably, the ALJ's analysis of the lack of consistency of Mr. Reed's opinions with the record mirrors her adverse credibility/consistency finding[11] regarding Plaintiff's subjective complaints. Plaintiff does not *directly* challenge the latter assessment of her subjective symptoms. An ALJ's analysis of such symptoms is generally given great deference. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In fact, a credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony, as the ALJ did in this case, where there are inconsistencies and contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Though she does not *directly* challenge the ALJ's adverse credibility/consistency assessment in this case, Plaintiff indirectly does so by criticizing the ALJ's reference to her third pregnancy in the ALJ's discussion of the inconsistency of Mr. Reed's opinions with the record. In context, the Court finds no error. It does not appear that the ALJ was focused on the fact of Plaintiff's pregnancy as much as on the fact that her care for two infants[12] from birth through the date of the hearing (at which time they were ages 1 and 3), plus a third young child, was inconsistent with Mr. Reed's opinion that she was completely unable to bend, kneel or crawl.

---

[11] An ALJ's assessment of symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added).

[12] While the ALJ stated that Plaintiff gave birth to her third son during the alleged disability period, the ALJ also noted that Plaintiff cared fulltime for two other children. As discussed, the birth of her second child in June 2017 coincided with her alleged onset of disability.

13

The ALJ's consistency analysis is substantially supported. At the hearing, Plaintiff testified that she avoided having the then one-year-old nap in his crib when she is home alone due to her difficulty in lifting him over the railing of the crib. (Tr. 46). She stated that she would ask him to climb up onto the couch so that she could change his diaper. (Tr. 45). But common sense alone supports the ALJ's view that over the years when her two youngest were not able to crawl/walk/or climb by themselves, much less understand and comply with instructions, Plaintiff would have engaged in bending activities to care for them during the 11-12 hours per day when her husband was at work. (Tr. 33 (testimony about spouse's work schedule)). Case law also supports the ALJ's reference to Plaintiff's provision of fulltime childcare for her three young children as among multiple daily activities that were inconsistent with her allegedly extreme postural restrictions. *See Moore v. Comm'r of Soc. Sec.*, 573 Fed. Appx. 540, 543 (6th Cir. 2014) ("The ALJ also properly took into account Moore's daily activities, which included caring for two school-aged children and performing household chores."). An ALJ may "justifiably" consider a plaintiff's ability to conduct daily life activities in the face of complaints of disabling pain. *See Warner*, 375 F.3d at 392; *Blacha v. Sec'y of HHS*, 927 F.3d 228, 231 (6th Cir. 1990).

### 2. The ALJ's RFC is Substantially Supported

In her second claim, Plaintiff argues that the ALJ failed to provide "a logical path of reasoning" when she incorporated certain limitations into Plaintiff's RFC without incorporating other limitations endorsed by the two agency consulting physicians, and/or included by Mr. Reed in the FCE. (Doc. 9 at 12, PageID 480). Again, the Court finds no reversible error.

Upon initial review on February 20, 2020, agency consultant Dr. Hall, M.D. opined that Plaintiff remained capable of work at the light exertional level, but could stand and/or

14

walk for 4 hours per day (with normal breaks) and sit for about 6 hours in a day (with normal breaks) (Tr. 65-66). Somewhat inconsistently, Dr. Hall further opined that based upon Plaintiff's reported scoliosis pain, her walking and standing should be limited to "30 min/hour" with Plaintiff allowed "to change positions for 5 min each hour." (Tr. 66). Dr. Hall opined that plaintiff could "occasionally" stoop, crouch, kneel and crawl, consistent with the RFC as determined by the ALJ. On reconsideration on June 10, 2020, Dr. Hughes fully concurred with Dr. Hall's assessment. (Tr. 72-74).

The ALJ found both consulting opinions to be "only partially persuasive because additional medical evidence submitted after these opinions were rendered demonstrates that the claimant is more limited than these opinions and that additional limitations are appropriate based on that evidence." (Tr. 19). Plaintiff argues that remand is required because the ALJ did not identify precisely which limitations endorsed by the agency consultants that she was incorporating into Plaintiff's RFC and which she was rejecting, or adequately explain why. Of course, a comparison of the agency reviewers' RFC opinions with the RFC determined by the ALJ readily reveals key differences. For the most part, the ALJ added limitations to those endorsed by the consultants, but she also omitted two limitations that they endorsed.

Plaintiff does not criticize the addition of four limitations,[13] but is highly critical of the ALJ's omission of a limit to standing/walking no more than 4 hours per day with only 30 minutes of standing/walking at one time, and allowance of a change in positions once

---

[13] Although the agency physicians found no handling/fingering limitations, the ALJ added a limitation to "frequent" handling, fingering and feeling. The agency physicians limited Plaintiff to reaching overhead occasionally only with the left upper extremity, but the ALJ expanded that to limit bilateral reaching. (Tr. 55). The agency consultants found no limitations in Plaintiff's ability to push/pull with lower extremities, but the ALJ limited her to "no foot controls or …commercial driving," and required her "to be able to elevate her lower extremities at the workstation six to nine inches." (*Compare* Tr. 72 *with* Tr. 17).

per hour for five minutes. In a closely related argument, Plaintiff criticizes the ALJ's failure to explicitly discuss a recommendation in Mr. Reed's FCE report that Plaintiff be limited to "no repetitive activities/tasks" based upon her report of "increased pain with minimal increase in activity level." (Tr. 328). Plaintiff argues that this Court should remand because there is no way to determine whether the ALJ inadvertently or intentionally omitted the referenced limitations. Plaintiff maintains that the specified limitations "could have" impacted the jobs about which the VE testified, even though Plaintiff simultaneously concedes it is "impossible to know." (Doc. 12 at 4).

The Court finds no error. The ALJ, not a physician, is responsible for assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir.2009). Here, the ALJ clearly stated that she found the opinions to be only "partially persuasive." She was not required to adopt the opinions verbatim.[14] *See Reeves v. Comm'r of Soc. Sec.*, 618 Fed. Appx. 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."). There has never been a requirement that an ALJ explain in detail why each specific limitation offered by every source was rejected. *See id*; 20 C.F.R. § 404.1520c(b)(1) (ALJs "are not required to articulate how [they] considered each medical opinion or prior administrative medical finding from one medical source individually."); *accord Daniels v. Comm'r of Soc. Sec.*,

---

[14]The Commissioner alternatively argues that the ALJ was permitted to ignore the change-in-positions limitation because the agency reviewers opined she could lift and carry weights that were consistent with the higher "light" exertional level. But that is not quite true. Although Drs. Hall and Hughes did indeed opine that Plaintiff had the ability to lift and/or carry up to 20 pounds consistent with the light exertional level, both also opined based upon Plaintiff's walking/standing limitations to 4 hours per day that she should be limited to the "sedentary" exertional level. (Tr. 67-68; Tr. 74-75).

Case No. 3:19-cv-02946, 2020 WL 6913490, at *10 (N.D. Ohio, Nov. 24, 2020); *Moore v. Comm'r of Soc. Sec.*, Case No. 1:13–cv–00395, 2013 WL 6283681, **7-8 (N.D. Ohio Dec. 4, 2013) (even though the ALJ did not incorporate all limitations from a consultant's opinion that the ALJ assigned great weight to, the ALJ's decision was not procedurally inadequate nor unsupported by substantial evidence).

In any event, the ALJ implicitly adopted a limitation consistent with the total amount of standing/walking endorsed by the consultants, because sedentary work by definition requires sitting most of the day. Pursuant to 20 C.F.R. § 404.1567, sedentary work may include some walking or standing, but only if such activities are performed no more than "occasionally," meaning less than one-third of an 8-hour workday. *See id.*, explaining that a job falls within the "sedentary" category "if walking and standing are required [only] occasionally and other sedentary criteria are met."). Therefore, the ALJ's limitation to sedentary work accommodated the consultants' opinions that Plaintiff could stand/walk no more than 4 hours per day.

That leaves only the exclusion of the consultants' opinions that Plaintiff could walk/stand no more than 30 minutes at one time and should be able to change positions once per hour, and Mr. Reed's "recommend[ation]" that Plaintiff avoid repetitive tasks. However, all of those limitations were based upon Plaintiff's subjective pain complaints, which the ALJ expressly discounted as inconsistent with the record. *See Reeves v. Comm'r of Soc. Sec.*, 618 Fed. Appx. at 275 (noting that limitations endorsed by agency consultants but omitted by the ALJ "lack substantial support elsewhere in the record"). In contrast, the ALJ cited to substantial medical and nonmedical evidence generated after the date of the consultants' review that supported the RFC as determined. Thus, the record is sufficiently clear as to why the ALJ did not credit the additional limitations. *See*

17

*Daniels v. Comm'r of Soc. Sec.*, 2020 WL 6913490, at *11 ("While Daniels contends that the ALJ should have included a more restrictive RFC limitation to account for Daniels' social interaction limitations, he has not shown that this RFC limitation is not supported by substantial evidence."); *see also generally*, *Nelson v. Comm'r Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006) (ALJ's analysis, while indirect, made clear the reasons that he found treating physicians' opinions to lack consistency and supportability, rendering harmless any error in failing to explicitly weigh those opinions).

Last, aside from speculative musings as to whether additional limitations "could have" impacted the sedentary job base to which the VE testified, Plaintiff has failed to demonstrate that she suffered any prejudice from the ALJ's failure to incorporate the omitted limitations. Courts generally will not reverse the Commissioner's decision "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004) (internal quotation marks and citation omitted); *Shineski v. Sanders*, 129 S. Ct. 1696, 1706 (2009).

### III. Conclusion and Order

For the reasons stated, substantial evidence supports the nondisability determination in this case. Accordingly, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** and that this case be **CLOSED.**

                                             *s/Stephanie K. Bowman*
                                             Stephanie K. Bowman
                                             United States Magistrate Judge